# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS

HIEN DUY NGUYEN, individually and on
behalf of all others similarly situated,

        Plaintiff,

    vs.

US EXPEDITERS, LLC, a Texas limited
liability company; and DOES 1 through 15,
inclusive,

        Defendants.

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW CAL. PENAL CODE § 638.51

## INTRODUCTION

1.      Defendant US Expediters, LLC ("US Expediters" or "Defendant") is a retailer of CPAP machines, supplies, and accessories.  As part of Defendant's marketing regime, US Expediters has partnered with TikTok to install sophisticated software on its landing page to learn the location, source, and identity of consumers who happen to land on their website.

2.      Plaintiff Hien Duy Nguyen ("Plaintiff") visited Defendant's website on November 30, 2025.  Without Plaintiff's knowledge or consent, Defendant deployed a de-anonymization process to identify Plaintiff using incoming electronic impulses generated from Plaintiff's device, as further described herein.  Defendant's installation of the TikTok tracing process violates California's Trap and Trace Law, codified at California Penal Code § 638.51.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class.  Further, at least one member of

the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

4. Defendant sells CPAP machines, supplies, and accessories. Defendant conducts substantial, continuous, and systematic business operations within California. Defendant actively markets its products to California entities and maintains ongoing business relationships with California customers. Defendant derives substantial revenue from California-based transactions. Defendant deliberately avails itself of the privilege of operating in California through its interactive Website.

5. This Court possesses general jurisdiction over Defendant because Defendant's principal place of business and headquarters are in Stafford, Texas.

6. Defendant specifically intended its surveillance operations to cause injury to California residents. Defendant configured its tracking systems on its Website to identify, profile, and exploit California users.

7. Defendant's purposeful direction of its surveillance activities at California residents through its own Website satisfies all constitutional due process requirements for the exercise of specific personal jurisdiction by this Court.

8. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §§ 1391(b)(1) and (c)(2) because Defendant's principal place of business is in this district and Defendant therefore resides in this district.

## PARTIES

9. Plaintiff Hien Duy Nguyen ("Plaintiff") is, and at all times relevant to this complaint has been, a citizen of California residing and located within California. Plaintiff maintains reasonable

expectations of privacy when browsing websites. Defendant systematically violated these expectations through its unauthorized surveillance activities.

10.    Defendant is a Texas limited liability company that owns, operates, and/or controls http://cpap.com/ (the "Website"). Through the Website, Defendant sells CPAP machines, supplies, and accessories.

11.    Plaintiff identifies DOE Defendants 1 through 15 as unknown entities that Defendant directed and controlled to participate in implementing or maintaining Defendant's system. Plaintiff will seek leave to amend this Complaint to identify these entities when Defendant's discovery responses reveal their true names and roles.

12.    Each DOE Defendant acted as Defendant's agent or employee in Defendant's implementation of the surveillance scheme described herein. Each DOE Defendant operated within the scope of its relationship with Defendant and participated with Defendant in the common plan to unlawfully track California residents for Defendant's commercial gain.

## FACTUAL ALLEGATIONS

### *Defendant's Website and the TikTok Software.*

13.     US Expediters is the proprietor of http://cpap.com/ (the "Website")

14.    Defendant entered into an agreement with TikTok that allowed Defendant to install and use software created by TikTok (the "TikTok Software") on its Website. TikTok, the creator of the website software, is headquartered in Culver City, CA.

15.    Defendant has installed the TikTok Software on its Website in order to identify website visitors, including Plaintiff, and facilitate the collection and analysis of user data for mutual financial gain of both Defendant and TikTok.

16.    While in California, Plaintiff visited Defendant's Website on November 30, 2025, after the TikTok Software was installed and within the statute of limitations period.

17.    The TikTok Software acts via a process known as "fingerprinting." Put simply, the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans.

18.    The TikTok Software gathers device and browser information, geographic information, referral tracking, and URL tracking by running code or "scripts" on the Website to send user details, including Plaintiff's information, to TikTok.

19.    By the time the user accesses the Website, the TikTok Software has already commenced collecting data from the user.  The TikTok Software transmits instructions to users' web browsers, including Plaintiff's so that Plaintiff's and users' personal information is sent to TikTok's servers. This level of data transmission is not necessary for basic website functionality.

20.    Additionally, since US Expediters has decided to use TikTok's "AutoAdvanced Matching" technology, TikTok scans every website for information.  Thus, when the website asks for information, such as name, date of birth, and address, the information is sent simultaneously to TikTok, so that TikTok can isolate with certainty the individual to be targeted.

21.    The TikTok Software runs on virtually every page of US Expediters's website, sending to TikTok images of website user's interests. An image of the code, as it appears side by side (and simultaneously) with the TikTok AutoAdvanced Matching tracking code US Expediters has placed on the page, can be seen here:



22.     The US Expediters website instantly sends communications to TikTok when a user lands on the Website, and every time a user clicks on a page.  In the example below, the right side of the image shows the various TikTok scripts being run by Defendant, and the incoming electronic impulses being sent to TikTok to add to their collection of user behavior:



*The TikTok Software is a Trap and Trace Device.*

23. California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." California Penal Code § 638.50(c).

24. The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the Website is collaborating with the Chinese government to obtain their phone number and other identifying information.

25. The TikTok Software is "reasonably likely" to identify the source of incoming electronic impulses. In fact, it is designed solely to meet this objective.

26. Defendant did not obtain Plaintiff's express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.

27. CIPA imposes civil liability and statutory penalties for the installation of trap and trace software without a court order. California Penal Code § 637.2; *see also*, *Moody v. C2 Educ. Sys.* (C.D. Cal. July 25, 2024) No. 24-cv-04249, 2024 WL 3561367, at *3.

28. Defendant did not obtain Plaintiff's express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.

## CLASS ACTION ALLEGATIONS

29. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

6

30.　　Plaintiff brings this action individually and on behalf of all others similarly situation (the "Class") defined as follows:

**All persons within California whose identifying information was sent to TikTok as a result of visiting the Website within the statute of limitations period.**

31.　　NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not greater.  The exact identities of Class Members may be ascertained by the records maintained by Defendant.

32.　　COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class.  Such common legal and factual questions, which do not vary between Class Members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

    a.　Whether the DB-SDK is a trap and trace process as defined by California law;

    b.　Whether Plaintiff and Class Members are entitled to statutory damages;

    c.　Whether Plaintiff Class Members are entitled to injunctive relief;

    d.　Whether Plaintiff and Class Members are entitled to nominal damages; and

    e.　Whether Class Members are entitled to disgorgement of unlawfully obtained data.

33.　　TYPICALITY: As a person who visited Defendant's Website and whose communication was subjected to a trap and trace  process on Defendant's Website, they are typical of the class.

34. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper can be excluded.

35. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of each Class Member is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed and address identical issues.

36. Defendant's actions inflicted direct and tangible harm upon Plaintiff and Class Members which is concrete and not speculative. An individual's data constitutes a form of personal property that was located on Plaintiff's own device, and Defendant effectively stole this property. The detailed digital profile that Defendant assembled possesses a quantifiable market value, with estimates ranging from $0.10 to $0.50 for a basic consumer profile and exceeding $5.00 for a B2B prospect interested in high-value professional services. Defendant misappropriated this valuable asset for its own commercial enrichment. Defendant accomplished this by intentionally through sending electronic code to Plaintiff's device that extracted personal information about Plaintiff from that device and transmitted that information to Demandbase. This extraction from Plaintiff's device and transmission to Demandbase further prevented and interfered with Plaintiff's ability and right to own the data on her own device and control where it would be sent it and how would be used.

37. Most importantly, Plaintiff and the Class were harmed because the information was used to fingerprint and identify the needle of an individual's visit from the haystack of all other anonymous internet traffic. Defendant and Demandbase had no right to attempt to uncover and

disclose anything about Plaintiff or Class Members' anonymous visits to Defendant's Website, much less transmit personal information to Demandbase and essentially forcing Plaintiff and Class Members to do business with a registered Data Broker. This information was not for sale.

## FIRST CAUSE OF ACTION

### Violations of California Penal Code § 638.51

### (The "California Trap and Trace Law")

38.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

39.    California's Trap and Trace Law is part of the California Invasion of Privacy Act ("CIPA") codified at Cal. Penal Code 630, *et. seq*.

40.    CIPA was enacted due to curb "the invasion of privacy resulting from the continual and increasing use of" certain technologies determined to pose "a serious threat to the free exercise of personal liberties."    CIPA extends civil liability for various means of surveillance using technology, including the installation of a trap and trace device.

41.    A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."    California Penal Code § 638.50(c).

42.    California Penal Code §638.51 provides that "a person may not install or use…a trap and trace device without first obtaining a court order…" § 638.51(a).

43.    Defendant uses a trap and trace process on its Website by deploying the TikTok Software on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software

9

is solely to identify the source of the incoming electronic and wire communications to the Website. The TikTok Software does not collect the content of website visitors' communication to the Website.

44.     Defendant did not obtain consent from Plaintiff before using trap and trace technology to identify users of its Website, and has violated Section 638.51.

45.     CIPA imposes civil liability and statutory penalties for violations of § 638.51.

46.     Therefore, Plaintiff is entitled to injunctive relief and statutory damages under California Penal Code § 637.2 and the equitable relief prayed for herein.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.     An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

2.     An order requiring the disgorgement of data unlawfully obtained by Defendant's deployment of a trap and trace device;

3.     An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

4.     Statutory damages pursuant to CIPA;

5.     Punitive damages;

6.     Nominal damages;

7.     Reasonable attorneys' fees and costs; and

8.     All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

10

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all claims so triable.

Respectfully submitted,

Hien Duy Nguyen

By His Attorneys,

TAULER SMITH LLP

Dated:  July 8, 2026

*/s/Robert Tauler*
Robert Tauler, Esq. (#24122095)

*/s/Camrie Ventry*
Camrie Ventry, Esq. (#24126131)

**TAULER SMITH LLP**
626 Wilshire Blvd., Suite 1100
Los Angeles, CA 90017
Telephone: (213) 927-9270

100 Crescent Court, 7th Floor
Dallas, TX 75201
Telephone: (512) 456-8760

*Attorneys for Plaintiff John Lyons*